UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DATHAN RICE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 1:20-CV-336 |
| ) | 1:18-CR-184 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Before the Court is Dathan Rice's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 49].[1] The United States has responded in opposition [Doc. 5], and Petitioner filed a reply [Doc. 6]. Petitioner also has two pending motions for appointment of counsel [Crim. Docs. 45 & 48], and a pending motion for status [Crim. Doc. 50]. For the reasons below, Petitioner's motions for counsel [Crim. Docs. 45 & 48] will be **DENIED**, his motion for status [Crim. Doc. 50] will be **DENIED as MOOT**, and his § 2255 motion [Doc. 1; Crim. Doc. 49] will be **DENIED**.

I.  BACKGROUND

In December 2018, Petitioner was charged in a one-count indictment pertaining to Petitioner possessing a firearm having been previously convicted of a felony. [Crim. Doc.

---

[1] Document numbers not otherwise specified refer to the civil docket.

1]. On July 16, 2019, Petitioner entered into a plea agreement with the government [Crim. Doc. 25], which was revised and signed by Petitioner and his counsel, Paul Bergman, III ("Attorney Bergman") on August 5, 2019 [Crim. Doc. 30]. Petitioner agreed to plead guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [*See id*.]. The Government and Petitioner also agreed to a Rule 11(c)(1)(C) sentence of 92 months' imprisonment. [*Id*. at 4]

In his plea agreement, Petitioner acknowledged that on October 29, 2018, Chattanooga Police Department ("CPD") investigators observed Petitioner walking around the 1200 block of Grove Street in Chattanooga. CPD officials, who believed that Petitioner had outstanding state arrest warrants and called to him by his nickname, saw Petitioner crouch down by a vehicle before talking to CPD officers. One of the officers checked where Petitioner crouched down and discovered a .380 Cobra firearm stolen out of South Carolina. Petitioner was arrested for the firearm and volunteered that he had approximately 2.0 grams of crack rock in his underwear. Petitioner, after being *Mirandized* and watching video of the incident, admitted to putting the firearm where CPD found it and admitted that he had the firearm for several months. Petitioner also admitted to having previously convicted of a felony: robbery. [*Id*. at 2-3]. On August 5, 2019, after the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019), Petitioner, the Government, and Attorney Bergman signed a stipulation stating that:

> [o]n the date alleged in the indictment in this case, the defendant knew he had been convicted of a felony offense, that, a crime punishable by imprisonment for a term exceeding one year. The defendant and his attorney agree that a superseding indictment or superseding information specifically alleging that the defendant knew of his convicted felon status at the time he

2

> possessed the firearm in this case is not necessary, and the defendant wishes to plead guilty pursuant to the previously-filed plea agreement.

[Crim. Doc. 29].

The Court conducted a change of plea hearing on August 5, 2019. Although there is no transcript of that hearing in the record, the minutes from the hearing indicate that Petitioner was rearraigned and specifically advised of his rights under Rule 11 of the Federal Rules of Criminal Procedure, that his motion to change plea to guilty was granted, that he waived the reading of the Indictment, that he pled guilty to Count 1 of the Indictment, that Petitioner was competent to enter a plea, that his plea was voluntary, and that he was to remain in custody until his sentencing hearing. [Crim. Doc. 31].

The Presentence Investigation Report ("PSR") calculated a total offense level of 27 and a criminal history category of VI, resulting in a guideline range of 130 to 162 months. [Crim. Doc. 33, ¶ 85]. However, Petitioner's guidelines range was restricted to 120 months due to the statutory maximum term of imprisonment. [*Id*.] The PSR also noted that Petitioner's plea agreement containing an agreed Rule 11(c)(1)(C) sentence of 92 months benefitted Petitioner because the agreed sentence was below the applicable guidelines range. [*Id*. at ¶ 86]. The government filed a notice of no objections to the PSR. [Crim. Doc. 34]. Petitioner, through counsel, also filed a notice of no objections to the PSR. [Crim. Doc. 35].

On December 2, 2019, the Court sentenced Petitioner to a total of 92 months' imprisonment and then three years of supervised release. [Crim. Doc. 38]. Petitioner did not file a direct appeal, but on November 30, 2020, he filed this timely § 2255 motion.

3

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a

preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner seems to raise three claims in this § 2255 motion: 1) ineffective assistance of counsel for coercing Petitioner to plead guilty to an indictment that was flawed on its face wherein a "material element was omitted," 2) ineffective assistance of counsel concerning direct appeal, and 3) that the indictment was flawed on its face because it did not contain the knowledge-of-status element as required by *Rehaif*. [Doc. 1; Crim. Doc. 49]. Petitioner also has several pending non-dispositive motions. The

Court will first address Claim 3, and then Claims 1 and 2 together, before addressing Petitioner's non-dispositive motions.

### A. Claim 3 – *Rehaif*

#### 1. *Procedural Default*

Because Petitioner failed to raise the issue presented in Claim 3 on appeal, he is procedurally defaulted from bringing this claim. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citing *United States v. Frady*, 456 U.S. 152, 167-168 (1982), and *Bousley v. United States*, 523 U.S. 614, 621–22 (1998)). However, Petitioner can overcome the default by showing cause and prejudice. Here, Petitioner has not attempted to show cause or prejudice for failing to raise these issues on appeal. Neither has Petitioner attempted to show that he is actually innocent of the underlying criminal offense.

Accordingly, Petitioner's Claim 3 will be **DENIED** as procedurally defaulted. However, as discussed below, this claim alternatively fails on the merits.

#### 2. *Merits*

Petitioner primarily argues that because the indictment did not contain the knowledge-of-status element as required in *Rehaif*, his conviction is invalid. [Doc. 1; Crim. Doc. 49]. Petitioner alleges that *Rehaif* was decided before he was sentenced, and the Government should have been strictly held to the *Rehaif* indictment requirements. [*Id.*]. The Government responds that Petitioner's claim is contradicted by Petitioner's post-*Rehaif*, pre-plea stipulation where Petitioner specifically stipulated that he knew of his

6

Case 1:20-cv-00336-RLJ-CHS   Document 7   Filed 05/04/22   Page 6 of 13   PageID #: 46

status as a felon, that a superseding indictment was unnecessary, and that his revised plea agreement listed the elements of the offense as set forth in *Rehaif*. [Doc. 5, p. 5]. Petitioner responds that he did not sign a revised plea agreement, nor did he sign a stipulation regarding the the knowledge-of-status requirement. [Doc. 6]. Petitioner asserts that the only plea agreement he signed was on July 16, 2019, and did not contain the scienter requirement. [*Id.*]

Here, after *Rehaif* was decided, and before Petitioner was sentenced, the Government and Petitioner entered a stipulation and a revised Plea Agreement correcting the indictment and elements of the offense. [Crim. Docs. 29 & 30]. Petitioner's assertion to the contrary in his response is clearly contradicted by the record and not credited. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Because Petitioner was advised of the knowledge-of-status element before signing the revised plea agreement, he cannot show that he would not have entered his plea had he been told of the knowledge-of-status element. *United States v. Hobbs*, 953 F.3d 853, 858 (6th Cir. 2020).

Further, Petitioner does not claim that he was unaware of his prior felony conviction, nor does he actually claim that he did not know he belonged to the category of people barred from possessing a firearm. [Doc. 1]. Even if Petitioner had alleged "actual innocence", Petitioner's knowledge of the ramifications of his felony convictions are irrelevant to his subsequent guilty plea and § 922(g) conviction. The law simply does not require that Petitioner knew his possession of a firearm was unlawful. *See United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) ("*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was

7

unaware of this provision of the United States Code."); *Matthews v. United States*, No. 19-2091, 2020 WL 2614619 (6th Cir. Jan. 6, 2020) (government is not required to prove defendant knew he was prohibited from possessing firearms to obtain § 922(g) conviction after *Rehaif*). Petitioner has not shown that he would have gone to trial, but for the alleged *Rehaif* error, thus Claim 3 fails on its merits.

Accordingly, Claim 3 will be **DENIED** as procedurally defaulted and on its merits.

### B. Claims 1 & 2 – Ineffective Assistance of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the

8

Case 1:20-cv-00336-RLJ-CHS   Document 7   Filed 05/04/22   Page 8 of 13   PageID #: 48

circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

1. ***Claim 1***

Petitioner's argument for Claim 1 fails at *Strickland's* first step. Petitioner's primary argument is that his counsel did not operate under the maxim, "every law has a loophole," and asserts that counsel was ineffective for failing to proceed to trial after *Rehaif* (as long as the Government did not supersede the indictment to correct the knowledge-of-status deficiency), allow jeopardy to attach, put on no proof, and then move for an acquittal based on *Rehaif*. [Doc. 1, pp. 19-20]. As stated above, counsel is only ineffective if Petitioner can show that his counsel's performance fell below prevailing professional norms. Counsel's performance is not judged in hindsight, but "on the facts of the case, viewed from counsel's perspective at the time, and recognizing that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Peterson v. Smith,* 510 F. App'x 356, 362 (6th Cir.

9

2013) (quoting *Strickland,* 466 U.S. at 690). Here, Petitioner provides no proof that failing to "find a loophole" falls below prevailing professional norms.

There is also no indication in the record that Petitioner's plan to go to trial would have affected the outcome of his case. It is clear from the record that the Government would have corrected the deficiency in the indictment by superseding it had Petitioner not signed the stipulation saying it was unnecessary to do so. [*See Crim. Doc.* 29]. Further, a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). Petitioner's decision to plead guilty was his, and his alone, after being presented with the deficient indictment and choosing not to require the Government to obtain a corrected, superseding indictment. Petitioner thus cannot show that he lost what he "otherwise would probably have won." Accordingly, Petitioner's Claim 1 will be **DENIED**.

2. *Claim 2*

Petitioner makes a conclusory statement that his attorney was ineffective on direct appeal as his Claim 2. [Doc. 1, p. 16]. Petitioner's Claim 2 lacks specific factual support for the allegation and fails to establish how counsel was ineffective on direct appeal. Petitioner does not allege that his counsel failed to file a requested appeal, nor did Petitioner file an appeal for which counsel could have been ineffective. As a result, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020).

Accordingly, Petitioner's Claims 1 and 2 will be **DENIED** as Petitioner has not shown that his counsel was ineffective, nor has he shown that he was prejudiced by any alleged ineffectiveness.

### C. Non-Dispositive Motions

#### 1. *Motions to Appoint Counsel [Crim. Docs. 45 &48]*

Petitioner filed two motions for appointed counsel, requesting the Court appoint him an attorney due to "a serious complex issue of substantive facts and law" based on *Rehaif*. Petitioner also alleges that the COVID-19 lockdowns have made it difficult to do legal research and drafting and asserts that he needs an attorney because he has no understanding of the law. [Crim. Docs. 45 &48]].

There is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (observing that the "right to appointed counsel extends to the first appeal of right, and no further"); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (noting that the constitutional right to counsel does not extend to collateral proceedings). However, a district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." *See Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987). In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

As discussed above, Petitioner has adequately presented his claims to the Court without the benefit of counsel, and the Court has found the issues to be without merit. None

11

Case 1:20-cv-00336-RLJ-CHS   Document 7   Filed 05/04/22   Page 11 of 13   PageID #: 51

of Petitioner's claims are legally or factually complex to warrant counsel. Petitioner has also failed to offer any material facts that would justify the appointment of counsel. Accordingly, his motions for counsel [Crim. Docs. 45 & 48] will be **DENIED**.

### 2. *Motion for Status [Crim. Doc. 50]*

Petitioner also filed a motion for a status update. [Crim. Doc. 50]. As the Court has addressed Petitioner's pending § 2255 motion and motions to appoint counsel, Petitioner's motion for a status update is moot. Accordingly, Petitioner's motion for status [Crim. Doc. 50] will be **DENIED as MOOT**.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 49] will be **DENIED** and **DISMISSED**. His motions for appointment of counsel [Crim. Docs. 45 & 48] will be **DENIED**, and his motion for status [Crim. Doc. 50] will be **DENIED as MOOT**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id*.; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge